IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02232-RBJ-KLM

BRIAN SCHABOW,

    Plaintiff,

v.

STEGGS, individually and officially as Denver Sheriff Deputy,
TOMSICK, individually and officially as Denver Sheriff Deputy Sergeant,
K. SHARP,  individually and officially as Denver Sheriff Deputy,
STOB, individually and officially as Denver Health Doctor,
CARROLL, individually and officially as Denver Health Psychiatric Nurse, and
EUGENE, individually and officially as Denver Health Practical Nurse,

    Defendants.
_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

    This matter is before the Court on Defendants Steggs, Tomsick, and Sharp's **Motion
to Dismiss Amended Complaint** [#69][1] (the "Denver Defendants' Motion"), filed in their
official capacities; on Defendants Stob, Rogers,[2] and Eugene's **Motion to Dismiss All
Claims Alleged Against Them in Plaintiff's Amended Prisoner Complaint** [#73] (the
"Medical Defendants' Motion"); on Defendant Steggs' **Motion to Dismiss** [#74] ("Steggs'

_____

    [1]  "[#69]" is an example of the convention the Court uses to identify the docket number
assigned to a specific paper by the Court's electronic case filing and management system
(CM/ECF).  This convention is used throughout this Recommendation.

    [2]  Plaintiff names Defendant "Carroll" in his Complaint [#60] but Defendants, in the Medical
Motion [#73], name the same Defendant as Carol Rogers, RN.  Plaintiff has not contested this
designation in his Response [#86], and so the Court refers to Defendant Carroll as Defendant
Rogers throughout this Recommendation.

Motion"), filed in his individual capacity; and on Defendants Tomsick and Sharp's **Motion to Dismiss Plaintiff's Amended Prisoner Complaint** [#75] ("Tomsick and Sharp's Motion"), filed in their individual capacities. This recommendation addresses all four motions (collectively, the "Motions"). Plaintiff, who proceeds as a pro se litigant,[3] filed a single Response [#86] in opposition to the Motions, and Defendants filed Replies [#89, #90, #91]. The Motions have been referred to the undersigned for recommendation pursuant to 28 U.S.C. § 636(b) and D.C.COLO.LCivR 72.1(c). *See* [#70, #76]. Having reviewed the entire case file and being sufficiently advised, the Court respectfully **RECOMMENDS** that the Motions [#69, #73, #74, #75] be **GRANTED**.

## I. Background

At all relevant times for purposes of this lawsuit, Plaintiff has been an inmate at the Van Cise–Simonet Denver Downtown Detention Center ("DDC") in the custody of the Denver County Sheriff's Department. *Am. Compl.* [#60] at 6. He brings this action pursuant to 42 U.S.C. § 1983 against six DDC employees. *Id.* at 2-4.

During July of 2016, while a pretrial detainee, Plaintiff was housed in the Special Management Unit of the DDC, which is a unit where he received his meals through a tray slot built into the door of his cell. *Id.* at 7. On July 17, 2016, Plaintiff alleges that the food on his lunch tray had a hair in it, which prompted him to ask DDC employee Deputy

---

[3] The Court must construe liberally the filings of a pro se litigant. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out [the pro se litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, pro se litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

Nyguen, who was serving lunch that day, to replace his tray. *Id.* Plaintiff alleges that this prompted a verbal argument with Deputy Nyguen and "in anger the Plaintiff threw a cup of juice on Nyguen through the tray slot that is cut in the steel door." *Id.* Plaintiff then stuck his hand and arm out of the tray slot and refused to move it until Deputy Nyguen complied with his demand that a supervisor come talk to Plaintiff about the hair in his food. *Id.* With his hand and arm in the tray slot, deputies could not close the flap. *Id.* Plaintiff alleges that approximately four minutes later Defendant Steggs approached Plaintiff's cell and instructed him to "take [his] hands out of the flap." *Id.* When Plaintiff refused to remove his arm and hands from the tray slot, Defendant Steggs "violently kicked the door to the tray slot while the Plaintiff had his hands through the tray slot." *Id.* Plaintiff alleges "[t]his kicking of the tray slot door by Defendant Steggs caused the tray slot door to slam on the Plaintiff's hands [ ] – crushing the Plaintiff's hand – causing much pain." *Id.*

After the door-kicking incident, Plaintiff "proceeded to cover the windows of his cell so none of the Denver Sheriff Deputies could see within his cell." *Id.* Plaintiff alleges that, after a short time had passed, without warning, notification, "or an attempted request to make the Plaintiff comply with any 'direct orders' – 'directive(s)' from a superior officer or deputy in general," Defendants Tomsick, Sharp, and others electronically opened his cell door and rushed inside. *Id.* Plaintiff alleges that Defendant Sharp, along with an unidentified deputy, grabbed Plaintiff first. *Id.* Then, Defendant Tomsick grabbed Plaintiff by the body and grabbed his hand. *Id.* Plaintiff alleges that "Defendant Tomsick used the law enforcement wrist and hand-twist/with finger twisting to take control of the Plaintiff." *Id.* The unidentified deputy then allegedly "started punching the Plaintiff in the back." *Id.* Plaintiff alleges that this altercation in his cell lasted approximately fifteen-to-twenty

seconds before Plaintiff was extracted from his cell.  *Id.* at 8.

Once out of his cell, Plaintiff alleges he was "walked up to a steel table [by an unidentified deputy] and slammed face down into the steel table without any way to brace [h]is fall for facial impact."  *Id.*  While held down on the table, Plaintiff alleges an unidentified deputy twisted his fingers, causing him "pain and suffering."  *Id.*  Two unnamed deputies then lifted him off the table and allegedly slammed him onto the ground, again without providing Plaintiff any opportunity to brace his fall.  *Id.*  Plaintiff alleges that he fell into a position on the ground that "caused [his] legs to be positioned awkwardly and painfully."  *Id.*  Next, one or more unidentified deputies landed on Plaintiff, causing him more pain in his legs.  *Id.*  Plaintiff alleges he pleaded with the deputies to get off his legs because he was in pain, but they refused and continued "yelling for the Plaintiff to straighten his legs and stop resisting so Defendant Sharp could place the leg restraints on the Plaintiff."  *Id.*  Plaintiff alleges he tried to comply, but Defendant Sharp got violent and "took out his O.P.N.'s and put them within the Plaintiff's right ankle area and twisted (contorted) them."[4]  *Id.*  Plaintiff alleges that "[t]his was an attempt to bring more 'pain' to the Plaintiff."  *Id.*  Further, Plaintiff alleges that "Defendant Sharp 'actually lost his physical self control' and did 'not' evaluate the Plaintiff's 'physical bodily positioning.'"  *Id.*  Plaintiff alleges that Defendant Sharp was able to eventually put the leg restraints on the Plaintiff, but they were "so tight that the 'blunt metal shackles actually did in fact cut into the Plaintiff's ankles - gashing the Plaintiff's skin - causing a[n] open flesh wound that produced blood."  *Id.*  An

---

[4]  Although Plaintiff does not define "O.P.N.," this appears to stand for Orcutt Police Nunchaku, which is a police pain compliance instrument used most commonly for grappling wrists and ankles.  *See*, *e.g.*, *Estate of Booker v. Gomez*, 745 F.3d 405, 413 (10th Cir. 2014).

unidentified deputy or deputies then placed him in a restraint chair. *Id.*

After the tray slot incident, cell extraction, and allegations of other physical altercations, Plaintiff alleges that Defendant Eugene was the DDC nurse responsible for conducting a medical evaluation of his condition. *Id.* Plaintiff alleges that Defendant Eugene completed a visual lookover, but "did 'not' ask the Plaintiff if and what injuries he had sustained and or even see the large gash on the Plaintiff's leg" or clean or cover the wound. *Id.* Plaintiff alleges that given his visible injuries, the only explanation for Defendant Eugene's failure to provide medical care to him was a "'culpable state of mind'" and that "Defendant Eugene chose to be 'deliberate[ly] indifferent' to the Plaintiff's medical needs." *Id.* Plaintiff does not allege that he told, or was prevented from telling, Defendant Eugene about the gash.

Plaintiff alleges that the next day, July 18, 2016, he had his public defender take pictures of his body. *Id.* Further, the "photographs identified a large gash on the Plaintiff's ankle, above the ankle high up rather–a swollen deep gash on the lower portion of the Plaintiff's ankle–extending all the way up the Plaintiff's calf area, bruising on the Plaintiff's back and bruising on the Plaintiff's hand from the food tray slot being slammed on it." *Id.* Later that day, Defendant Rogers conducted x-rays on his ankle and leg and determined that no bones were broken. *Id.* at 9. Plaintiff alleges that Defendant Rogers has no training in reading x-rays and therefore "acted within a professional scope that Defendant [Rogers] had no training in." *Id.* However, Plaintiff does not allege that his bones were actually broken or that Defendant Rogers actually missed any information shown by the x-rays.

Lastly, Plaintiff alleges that he "submitted numerous medical request[s] over the course of the next ten days to see the doctors about his injuries stemming from officers[']

(Defendants in this complaint) assault on the 17th of July 2016." *Id.* Plaintiff alleges that "Defendant Stob did not evaluate the Plaintiff at any time after the incident where he sustained his injuries and this is a 'deliberate indifference' to the Plaintiff's medical needs because the Plaintiff should have been seen by a medical provider who was qualified to evaluate the Plaintiff's medical injuries." *Id.* Plaintiff does, allege, however, that Defendant Stob performed a medical examination on him ten days after the cell extraction. *Id.* at 12. Plaintiff alleges that his pain and suffering "was avoidable by doing a medical evaluation and providing the Plaintiff with 'adequate medical care' but with a 'culpable state of mind' Defendant Stob chose 'not' to do so" sooner. *Id.* at 9.

Plaintiff claims, pursuant to 42 U.S.C. § 1983, that each of the six Defendants, in their individual and official capacities, have inflicted unnecessary pain and suffering constituting cruel and unusual punishment in violation of the Plaintiff's rights under the Eighth and Fourteenth Amendments of the United States Constitution. *Id.* at 16, 20. Plaintiff seeks injunctive relief to receive "adequate medical care" and "to be free from excessive use of force" and to require Defendants to follow proper cell extraction policy and procedure. *Id.* at 22. Plaintiff also seeks $500,000 as "compensatory; nominal; and punitive damages" for the injuries suffered by Plaintiff as a result of Defendants' actions. *Id.*

## II. Standard of Review

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide

'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted).

### III.  Analysis

Plaintiff asserts that Defendants violated his rights under the Eighth and Fourteenth Amendments to the United States Constitution. *Am. Compl.* [#60] at 16, 20. Defendants argue that the Court should analyze Plaintiff's claims under the Eighth Amendment. *Tomsick & Sharp's Motion* [#75] at 4; *Medical Defs.' Motion* [#73] at 6; *Steggs' Motion* [#74] at 5. However, Plaintiff was a pretrial detainee at the time of the events underlying this lawsuit, and pretrial detainees are protected under the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment's proscription against cruel and unusual punishment. *Berry v. City of Muskogee*, 900 F.2d 1489, 1493 (10th Cir. 1990); *see also Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015). However, the Eighth Amendment still provides the benchmark for claims of excessive force and cruel and unusual punishment. *Eaves v. El Paso Cty. Bd. of Cty. Commissioners*, No. 16-cv-01065-KLM, 2017 WL 1243013, at *5 (D. Colo. Mar. 24, 2017); *Snyder v. Spilde*, No. 15-cv-02169-GPG, 2016 WL 1059612, at *2 (D. Colo. Mar. 17, 2016). Therefore, the Court analyzes Plaintiff's claims under the Fourteenth Amendment, which incorporates the Eighth Amendment framework, and the *Kingsley* "objectively reasonable" test for excessive force against pretrial detainees. *Kingsley*, 135 S. Ct. 2466, 2473 (2015).

**A.    Qualified Immunity for Deputy Defendants Steggs, Tomsick, and Sharp**

Defendants Steggs, Tomsick, and Sharp assert that they are entitled to qualified immunity. *Steggs' Motion* [#74] at 4-5; *Tomsick & Sharp's Motion* [#75] at 13-15. Government officials are entitled to qualified immunity from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person in their position would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity also offers protection from trial and other burdens of litigation. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

The Court's analysis of qualified immunity in the context of a 12(b)(6) motion involves two inquires. The Court must determine whether the alleged facts taken in the light most favorable to the plaintiff sufficiently allege a constitutional violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The Court must also consider whether Plaintiff has shown that "the constitutional right was clearly established at the time of the alleged unlawful activity." *Swanson v. Town of Mountain View, Colo.*, 577 F.3d 1196, 1199 (10th Cir. 2009) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). The Court may assess these two inquires in either order. *Pearson*, 555 U.S. at 236.

The question of whether the constitutional right was clearly established must be asked in "the context of the particular case before the court, not as a general, abstract matter." *Simkins v. Bruce*, 406 F.3d 1239, 1241 (10th Cir. 2005). That is, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer [in the defendant's position] that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202; *see also Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). In order for a constitutional right to be clearly established, there

must be a Supreme Court or Tenth Circuit decision on point, or the clear weight of authority from other circuits must establish the constitutional right. *Medina v. City & Cty. of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992). In other words, there must be case law in which a constitutional violation was found based on similar conduct. *See Callahan v. Millard Cty.*, 494 F.3d 891, 903 (10th Cir. 2007). "The precedent is considered on point if it involves materially similar conduct or applies with obvious clarity to the conduct at issue." *Lowe v. Raemisch*, 864 F.3d 1205, 1208 (10th Cir. 2017) (internal quotations omitted). "Because the prior case must involve materially similar conduct or apply with obvious clarity, qualified immunity generally protects all public officials except those who are plainly incompetent or those who knowingly violate the law." *Id.* (internal quotations omitted).

### 1.    Excessive Force

Defendants argue that Plaintiff fails to adequately assert a constitutional violation because his allegations do not satisfy both the objective and subjective prongs of the excessive force test under the Eighth Amendment. *Tomsick & Sharp's Motion* [#75] at 5; *Steggs' Motion* [#74] at 5. However, Defendants are applying an outdated standard. *See Kingsley*, 135 S. Ct. 2466. According to *Kingsley*, to successfully allege a 42 U.S.C. § 1983 claim of excessive force under the Fourteenth Amendment, a pretrial detainee plaintiff must allege two elements: (1) that the defendant possessed a "purposeful, a knowing, or possibly a reckless state of mind," *id.* at 2473 (finding negligent or accidental infliction of harm is beneath the threshold of constitutional due process); and (2) that the defendant's actions were objectively unreasonable in light of facts and circumstances of that particular case. *Id.*

Here, Plaintiff makes no allegations that any Defendant's behavior was negligent or

accidental. Moreover, Plaintiff's allegations clearly suggest purposeful conduct; i.e., "slamming" him on a table, refusing his pleas to get off his legs, and punching him in the back. Therefore, Plaintiff adequately alleges the first element of a purposeful or knowing state of mind as required for an excessive force claim under the Fourteenth Amendment as to each of the six Defendants.

To determine objective reasonableness under the second element, the Court should consider, but is not limited to considering, the following factors: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; . . . whether the plaintiff was actively resisting"; and the legitimate interests of the need to maintain internal order and security at a prison institution. *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). De minimus uses of physical force are the sort that are not "repugnant to the conscience of mankind" and are not a constitutional violation. *Id.* at 9-10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986).

### a. Defendant Steggs

Plaintiff alleges that after he refused a command to take his hands out of the tray slot, Defendant Steggs "violently kicked the door to the tray slot while the Plaintiff had his hands through the tray slot" and that this "caused the tray slot door to slam on the Plaintiff's hands [sic]–crushing the Plaintiff's hand–causing much pain." *Am. Compl.* [#60] at 11. Plaintiff alleges that Defendant Steggs had "deliberate indifference[,] a culpable state of mind, cause[d] the unnecessary wanton [ ] infliction of 'pain and suffering' on the Plaintiff."

*Id.* Lastly, Plaintiff alleges that there was "bruising on Plaintiff's hand from the food tray slot being slammed on it."[5]  *Id.* at 8.

The Court applies the *Kingsley* factors to determine whether Defendant Steggs' actions constitute a constitutional violation.  Specifically, the Court examines the need for force and the amount of force, the threat perceived by Defendant Steggs, whether Plaintiff was resisting, the legitimate interests in the need to maintain internal order, and the extent of Plaintiff's injuries.  *See Kingsley*, 135 S. Ct. at 2473.  Although, a claim of excessive force does not require a certain severity of injury, that is one factor that the Court considers in determining whether the action rose to the level of constitutional violation.  *Id.*; *see also Bomprezzi v. Kaprivnikar*, No. 11-cv-03344-REB-MEH, 2012 WL 7763089, at *5 (D. Colo. Aug. 3, 2012).

First, Plaintiff admits that he was refusing to obey Defendant Steggs' order to remove his hand from the tray slot.  *Am. Compl.* [#60] at 7.  Plaintiff also admits that he had already thrown juice at Deputy Nyguen via the tray slot in his door.  *Id.*  Plaintiff fails to provide allegations that by keeping the tray slot open he was not posing a continued threat to the officers.  Finally, Plaintiff alleges bruising to his hand from the tray slot slamming on it but fails to provide any allegations to demonstrate that his bruise was severe enough, on its own, to demonstrate that he was subjected to excessive force.  *Marshall v. Milyard*, 415 F. App'x 850, 853 (10th Cir. 2011) (finding pushing a cubicle-cell wall into a prisoner but only causing bruises is not enough to constitute a constitutional violation).

---

[5]  The specifics of Plaintiff's allegations regarding his hand(s) and the tray slot are unclear to the Court.  Plaintiff alleges that both of his hands were in the tray slot when Defendant Steggs slammed it shut, but only alleges bruising to a singular hand.  Further, Plaintiff makes no allegation of broken bones or diminished functionality of his hand.  *See Am. Compl.* [#60] at 8.

Considering that Plaintiff had already assaulted a deputy, that Plaintiff fails to allege he did not pose another comparable threat, and that Plaintiff does not allege that he incurred a serious injury, the Court finds that Plaintiff fails to sufficiently allege that Defendant Steggs' actions were "objectively unreasonable" in light Defendant Steggs' need to maintain order. Thus, Defendant Steggs' actions do not rise to the level of a constitutional violation. Finding that Plaintiff's claim does not rise to the level of a constitutional violation, the Court need not determine whether the "clearly established right" prong of the qualified immunity test is met. *Saucier*, 533 U.S. at 201. Therefore, Defendant Steggs is entitled to qualified immunity, and the Court **recommends** that Plaintiff's claim of excessive force with respect to Defendant Steggs in his individual capacity be **dismissed with prejudice**. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.").

### b. Defendant Tomsick

Plaintiff alleges only the following about Defendant Tomsick's actions. Defendant Tomsick, as the first deputy to enter Plaintiff's cell, grabbed his body, then his hand, and proceeded to "use[ ] the law enforcement wrist and hand–twist/with finger twisting to take control of the Plaintiff." *Am. Compl.* [#60] at 7. Defendant Tomsick twisted his fingers and arm to "take control of [him]." *Id.* Defendant Tomsick and others "violently assaulted the Plaintiff," but Plaintiff does not allege any additional specific facts regarding Defendant Tomsick's actions as part of this alleged assault. *Id.* Notably, Plaintiff does not specifically allege that Defendant Tomsick's actions caused him any injury or pain.

Following the factors recommended in *Kingsley*, the Court considers whether the allegations demonstrate that there was a legitimate reason for Defendant Tomsick to twist Plaintiff's fingers, whether Plaintiff was resisting, and the extent of Plaintiff's alleged injuries. *See* 135 S. Ct. at 2473. Generally, actions similar to arm twisting are de minimus and do not rise to the level of a constitutional violation. *Marshall*, 415 F. App'x at 852-53 (finding an officer digging fingernails into a prisoner's arm with enough force to injure him did not rise to the level of cruel and unusual punishment); *see also Norton v. City of Marietta*, 431 F.3d 1145, 1156 (10th Cir. 2005) (holding that grabbing and twisting a prisoner's neck was "not objectively harmful enough to establish a constitutional violation"). Viewing the allegations in a light most favorable to Plaintiff, given Plaintiff's admission that Defendant Tomsick's actions were to "take control of [him]," given that Plaintiff fails to allege any injury from Defendant Tomsick's actions, and given Defendant Tomsick's legitimate interest in maintaining order in the DDC, the Court finds that Plaintiff fails to allege that Defendant Tomsick's actions were "objectively unreasonable." 135 S.Ct. at 2473.

Finding that Plaintiff's claim does not rise to the level of a constitutional violation, the Court need not determine whether the "clearly established right" prong of the qualified immunity test is met. *Saucier*, 533 U.S. at 201. Defendant Tomsick is entitled to qualified immunity, and the Court therefore **recommends** that Plaintiff's excessive force claim against Defendant Tomsick in his individual capacity be **dismissed with prejudice**. *See Brereton*, 434 F.3d at 1219.

### c.    Defendant Sharp

Plaintiff alleges that after he was extracted from his cell, Defendant Sharp "took out

his O.P.N.'s and put them within the Plaintiff's right ankle area and twisted (contorted) them." *Am. Compl.* [#60] at 8. Defendant Sharp yelled at Plaintiff, demanding that he straighten his legs. *Id.* Plaintiff alleges that he "tr[ied] to comply" with Defendant Sharp's command to straighten his legs and alleges that if Defendant Sharp had "evaluate[d] the Plaintiff's physical bodily positioning . . . [he] would have seen that the Plaintiff could not have complied with the directive due to the [other officers applying pressure on] his the Plaintiff's [sic] legs." *Id.* Plaintiff also asserts that Defendant Sharp applied weight and pressure to his legs which caused him an unspecified amount of pain. *Id.* Next, "Defendant Sharp placed the 'leg restraints' on the Plaintiff so tight that the 'blunt metal shackles actually did in fact cut into the Plaintiff's ankles – gashing the Plaintiff's skin - causing a[n] open flesh wound that produced blood.'" *Id.* Plaintiff asserts that the metal shackles caused him "much pain and suffering." *Id.*

Lastly, Plaintiff alleges that several months after the cell extraction, Plaintiff was examined by an orthopedist and alleges that he "has in fact received 'permanent damage' due to the leg restraints being placed so tight on the Plaintiff and further how Defendant Sharp used the O.P.N.'s on the Plaintiff." *Id.* at 12. Although Plaintiff does not identify what his specific permanent injury is, he alleges that he "is waiting to receive a[n] ankle brace that he possibly will have to wear from now on"; that he "has been prescribed ice rub down for his tendons in his ankles d[ue] to him now being diagnosed with tend[i]nitis"; that he "will now have to be on the anti-inflammation medication Mobic (Maloxicam) due to the Plaintiff now having inflammation build up around his ankle area now when he walks on them or tr[ies] to perform exercises"; and that "[w]hen Plaintiff does any serious amount of walking or running laps in the small recreation room or exercises–the Plaintiff's ankles start causing

him much 'pain and suffering.'" *Id.*

Using the *Kingsley* factors, the Court considers whether the allegations demonstrate that Plaintiff was actively resisting, whether Defendant Sharp used a reasonable amount of force, if Defendant Sharp made any effort to limit the amount of force used, the extent of Plaintiff's injuries, and the threat reasonably perceived, as well as the need to maintain order at DDC. *See* 135 S. Ct. at 2473.

### i.    Resisting Restraint

First, Plaintiff fails to allege that he was not actively resisting Defendant Sharp's actions, but rather admits that some of Defendant Sharp's actions were to "make the Plaintiff comply with Defendant Sharp's directive." *Am. Compl.* [#60] at 8.  In *Harper v. Tirello*, No. 16-CV-0121-CVE-PJC, 2017 WL 6459803, at *6 (N.D. Okla. Dec. 18, 2017); the court analyzed a similar cell extraction case using the *Kingsley* factors.  In *Harper*, the prisoner-plaintiff alleged that he threw his food tray on the floor, then walked back into his cell.  Then, while he merely sat on his bed, the officer-defendants entered his cell, shot him with a high-voltage taser, threw him on the ground, and placed him in restraints.  *Id.*  The plaintiff in *Harper* alleged he told the officers he was unable to comply with the officers' request to go to the ground because of his physical disabilities.  *Id.*  The *Harper* court held that these allegations were sufficient to state a claim that the officers used objectively unreasonable force in violation of the plaintiff's Fourteenth Amendment's protection from excessive force and, thus, the officer-defendants' motion to dismiss was denied. *Id.*

The Court finds that the facts of *Harper* are distinguishable from Plaintiff's allegations. In *Harper*, the plaintiff told the officer-defendants he could not comply with the command to go to the ground because of his physical disabilities but here, Plaintiff alleges he could not

comply with Defendant Sharp's command to straighten his legs because Defendant Sharp and others were already on top of his legs. *Am. Compl.* [#60] at 8. Plaintiff alleges that Defendant Sharp, if he would have evaluated the situation, would have seen that Plaintiff could not comply. *Id.* However, importantly, Plaintiff fails to allege that he told Defendant Sharp he could not comply with the command to straighten his legs. Additionally, Plaintiff does not allege his failure to comply was due to a physical disability, nor does Plaintiff allege that he was not resisting restraint, like the *Harper* plaintiff who was merely sitting on his bed. Therefore, although both plaintiffs allege that as a result of noncompliance with orders, the officer-defendants used excessive force which caused injury, Plaintiff's allegations are distinguishable from *Harper* because Plaintiff has not alleged that he told Defendant Sharp he could not comply, nor has he alleged that he was not resisting restraint.

## ii.     Use of Force

Next, Plaintiff alleges that Defendant Sharp proceeded to inflict more pain on Plaintiff even when Plaintiff was unable to comply with his requests because he was being physically restrained by Defendant Sharp and others. *Am. Compl.* [#60] at 8. Additionally, Plaintiff alleges that rather than limiting his use of force, Defendant Sharp "actually lost his physical self control" and continued to inflict pain upon Plaintiff by laying across Plaintiff's legs and putting leg restraints on him that were "very–very–very tight." *Id.* However, Plaintiff does not allege that Defendant Sharp's use, and amount of, force was unnecessary given the circumstances of the cell extraction. Plaintiff does not allege that he would have complied with Defendant Sharp's orders if Defendant Sharp had applied less force or no force at all, but rather Plaintiff admits that some of Defendant Sharp's actions were "to make the Plaintiff comply." *Id.*

### iii. Injury

Plaintiff also asserts that Defendant Sharp put metal shackles on his legs so tightly that Plaintiff bruised and bled and has incurred permanent physical damage. *Id.* However, the Tenth Circuit, in *Stanton v. Furlong*, held that minor abrasions and minor trauma from tight handcuffs on a prisoner does not constitute excessive force in violation of the constitution. 73 F. App'x 332, 334 (10th Cir. 2003). Additionally, the Tenth Circuit has cited sister circuit examples of conduct not rising to the level of a constitutional violation such as: an officer shoving a prisoner into a doorframe resulting in a back bruise; pushing a cubicle-cell wall onto a prisoner, causing bruises; and even a single blow to the head causing contusion. *Marshall*, 415 F. App'x at 853. Lastly, seriousness of injury is only one of several considerations in determining whether the use of force was reasonable. *Kingsley*, 135 S. Ct. at 2473.

Plaintiff fails to allege with specificity the severity of the injury. Additionally, Plaintiff's alleged diagnosis occurred approximately six months after the cell extraction, but Plaintiff fails to allege any facts about the severity of the injury or pain for the period of time between the cell extraction and the diagnosis. Tenth Circuit cases that analyzed similar facts have concluded that the use of some force, even resulting in some injury, may not rise to the level of a constitutional violation when the force is used to restrain a resisting prisoner. *See, e.g.*, *Richardson v. Daniels*, 557 F. App'x 725, 727-28 (10th Cir. 2014) (holding minor abrasions and skin breaks as a result of dragging are insufficient to allege cruel and unusual punishment). The Court therefore finds that Plaintiff fails to sufficiently allege that, under the specific circumstances of this case, Defendant Sharp's actions caused injury that, by itself, rises to the level of a constitutional violation.

### iv.     Threat Reasonably Perceived

Plaintiff does not allege that he was not a threat to Defendant Sharp, nor does Plaintiff allege that Defendant Sharp's actions were not to maintain order at DDC. Rather, Plaintiff admits that he had already thrown juice at one officer, violated DDC policy by covering the windows to his cell, and that some of Defendant Sharp's actions were to force him to comply with officer directives. *Am. Compl.* [#60] at 8. Given the numerous admitted violations of DDC policy and Plaintiff's failure to comply with orders, the Court finds that Plaintiff fails to sufficiently allege that it was objectively unreasonable for Defendant Sharp to use force to maintain order at DDC.

Considering these factors, the Court finds that Plaintiff's claim does not rise to the level of a constitutional violation. The Court therefore need not determine whether Plaintiff's allegations meet the "clearly established right prong" of the qualified immunity test. Defendant Sharp is entitled to qualified immunity and the Court therefore **recommends** that Plaintiff's claim against Defendant Sharp be **dismissed without prejudice**. *See Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990).[6]

### 2.     Failure to Intervene

Plaintiff asserts that Defendants Steggs, Tomsick, Sharp, and Eugene failed to

---

[6] The dismissal of an action pursuant to Rule 12(b)(6) is a resolution on the merits and is ordinarily prejudicial. *Brierly v. Schoenfeld*, 781 F.2d 838 (10th Cir. 1986) (affirming a district court decision to dismiss with prejudice an action brought under 42 U.S.C. § 1983). However, due to heightened concerns when the plaintiff is proceeding pro se, dismissal with prejudice is only appropriate "where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001). Here, it is possible that the claim against Defendant Sharp pursuant to the Fourteenth Amendment could raise substantial issues upon further investigation and development, and thus prejudice should not attach to the dismissal. *See Reynoldson*, 907 F.2d at 127.

intervene during the cell extraction.  *Am. Compl.* [#60] at 15.  The Tenth Circuit has held that "a law enforcement official who fails to intervene to prevent another law enforcement official's use of excessive force may be liable under § 1983."  *Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996).  However, here the Court finds that none of the Defendants engaged in constitutionally prohibited excessive force and, therefore, none of the Defendants can be liable under a failure-to-intervene theory because there is no successfully stated claim for excessive force.  Therefore, the Court **recommends** that Plaintiff's claim of failure to intervene against each Defendant in his individual capacity be **dismissed without prejudice**.  *See Reynoldson*, 907 F.2d at 127.

## C.    Qualified Immunity for Medical Defendants Stob, Rogers, and Eugene

Plaintiff alleges that Defendants Stob, Rogers, and Eugene violated his Eighth and Fourteenth Amendment rights through their deliberate indifference to his medical needs.[7]  *Am. Compl.* [#60] at 12-13.  The Medical Defendants argue that the qualified immunity doctrine protects them from Plaintiff's claims.  *Medical Defs.' Motion* [#73] at 4.

The Court analyzes Plaintiff's claim according to the two-step qualified immunity doctrine: (1) whether Plaintiff sufficiently alleges a constitutional violation; and (2) whether that constitutional right was clearly established.  *Saucier*, 533 U.S. at 201.

The Eighth Amendment to the United States Constitution provides that "cruel and unusual punishments" shall not be inflicted. U.S. Const. amend. VIII. Punishments that

---

[7]  Pretrial detainees are protected by the Fourteenth Amendment rather than the Eighth Amendment, however, the degree of protection and the analysis is the same under both Amendments.  *Shue v. Laramie Cty. Det. Ctr.*, 594 F. App'x 941, 945 (10th Cir. 2014); *see also Silva v. Bd. of Cty. Comm'rs for the Cty. of Roosevelt*, No. 2:15-cv-1046-MCA-SMV, 2017 WL 4325769, at *4 (D.N.M. Sept. 26, 2017).

"involve the unnecessary and wanton infliction of pain" violate this provision. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). Because prisoners "must rely on prison authorities to treat [their] medical needs," the Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976) (quoting *Gregg*, 428 U.S. at 173). The test for deliberate indifference is both objective and subjective: a prisoner must establish that he was deprived of a medical need that is, objectively, "sufficiently serious," and that the defendant subjectively knew of and disregarded "an excessive risk to [the prisoner's] health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994).

Plaintiff asserts that Defendant Eugene was his first medical provider after the cell extraction. *Am. Compl.* [#60] at 8. Plaintiff alleges that Defendant Eugene completed a visual look over "the Plaintiff's body and further did not ask the Plaintiff if and what injuries he [had] sustained and or even see the large gash on the Plaintiff's leg let alone clean and cover that wound." *Id.* at 8. Plaintiff conclusorily asserts that Defendant Eugene was unqualified to complete the assessment and that Defendant Eugene had the mental state of "deliberate indifference to the Plaintiff's medical needs" and "caused the Plaintiff an unnecessary wanton infliction of pain and suffering." *Id.* Lastly, Plaintiff alleges that the numerous injuries he suffered "were visible so there was no reason for Defendant Eugene 'not' to provide the Plaintiff with medical care other than in a 'culpable state of mind' [sic] Defendant Eugene chose to be 'deliberate indifferent' to the Plaintiff's medical needs." *Id.* Plaintiff does not, however, allege that he told, or was prevented from telling, Defendant Eugene about the gash on his leg and requested that it be treated.

Plaintiff next alleges that the day after his cell extraction, Defendant Rogers saw Plaintiff and performed x-rays on his ankle and leg. *Id.* at 9. Plaintiff asserts that Defendant Rogers, on the same day, determined that no bones were broken. *Id.* Plaintiff conclusorily alleges that "Defendant [Rogers] is 'not' trained to read x-rays so Defendant [Rogers] acted within a professional scope that Defendant [Rogers] had no training in." *Id.* Lastly, Plaintiff makes a conclusory statement that Defendant [Rogers] did not provide adequate medical care. *Id.* at 13. Plaintiff does not, however, allege that he told Defendant Rogers about the gash on his leg or any other injuries or that Defendant Rogers disregarded such injuries.

Plaintiff alleges that Defendant Stob did "not evaluate the Plaintiff at any time after the incident where he sustained his injuries and this is 'deliberate indifference' to the Plaintiff's medical needs because the Plaintiff should have been seen by a medical provider who was qualified to evaluate the Plaintiff and make a proper medical evaluation of the Plaintiff's medical injuries and what medical care should be prescribed for treatment." *Id.* Plaintiff alleges that "Defendant Stob knew of the Plaintiff's injuries and yet permitted the Plaintiff to suffer." *Id.* Plaintiff alleges that he now has permanent damage to his ankles resulting in pain during serious walking or exercise, may require wearing an ankle brace, and requires the use of anti-inflammatory medication. *Id.* Plaintiff alleges that these permanent injuries were all "avoidable by doing a medical evaluation." *Id.* Lastly, Plaintiff alleges that Defendant Stob was the medical provider who evaluated him ten days after the cell extraction, but during this evaluation Defendant Stob stood outside of Plaintiff's cell, without ever entering. *Id.* at 12.

### 1.    Objective Component

The Medical Defendants argue that Plaintiff fails to meet the objective component of

a deliberate indifference claim because he fails to allege an objectively serious medical need. *Medical Defs.' Motion* [#73] at 7. In order to satisfy the objective prong of the test for deliberate indifference, a medical need must be sufficiently serious. *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999). A medical need is sufficiently serious if it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980) (quoting *Laaman v. Helgemoe*, 437 F. Supp. 269, 311 (D.N.H. 1977)). A medical need is sufficiently serious if medical providers have previously indicated the severity of the situation to the plaintiff and the risks of not seeking medical care. *Burnham v. Rable*, No. 13-cv-01194-RBJ-KLM, 2014 WL 2892239, at *5 (D. Colo. June 26, 2014). A delay in medical care can constitution a violation of the Eighth Amendment, but only if the delay resulted in substantial harm. *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005). "The substantial harm requirement 'may be satisfied by lifelong handicap, permanent loss, or considerable pain.'" *Id.* (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

Plaintiff does not allege that the Medical Defendants previously indicated to Plaintiff that he had any serious injury. *See Burnham*, 2014 WL 2892239, at *5. Plaintiff does, however, allege that he had a large gash and was bleeding on his ankle on the day of the incident. *Am. Compl.* [#60] at 13. But, Plaintiff fails to sufficiently allege that his cut was so obvious or serious that even a lay person would recognize the need for medical attention. *Ramos*, 639 F.2d at 575; *compare*, *e.g.*, *Oxendine v. Kaplan*, 241 F.3d 1272, 1278 (10th Cir. 2001) (finding a severed finger with blackening and necrifying tissue is sufficient for a lay person to know that it needs a doctor's attention), *with Richardson*, 557 F. App'x at 727-28

(holding that minor abrasions and skin breaks as a result of dragging are insufficiently serious).

Plaintiff does, however, allege that several months after the cell extraction, he received a medical diagnosis of tendinitis and permanent injury to his ankle. *Am. Compl.* [#60] at 12. Specifically, Plaintiff alleges that he may have to wear an ankle brace from now on and that he endures pain and suffering in his ankles when he does any serious amount of walking or exercise. *Id.* Plaintiff conclusorily alleges that these injuries are a "permanent disability that will now affect him for the rest of his life." *Id.*

The Court finds that a "gash" on Plaintiff's ankle without further explanation as to the severity of that cut, is not sufficient to rise to the level of a lay person knowing that it needs medical attention, and that Plaintiff fails to allege that his injuries were previously diagnosed as mandating treatment. However, the Court finds that Plaintiff's allegations that he has a "permanent disability" that resulted from delay in care may rise to the level of a constitutional violation as a substantial injury or lifelong handicap resulting from a delay in medical care. *Mata*, 427 F.3d at 751. Thus, the Court assumes for purposes of this Recommendation only, that Plaintiff has sufficiently alleged the first element, and therefore turns to examine the second element.

### 5. Subjective Component

Even assuming that Plaintiff sufficiently alleges the first objective element, his claims against the Medical Defendants fail under the second subjective element. The Medical Defendants argue that Plaintiff's allegations do not satisfy the subjective standard of the deliberate indifference test because Plaintiff fails to sufficiently allege that the Medical Defendants had culpable states of mind. *Medical Defs.' Motion* [#73] at 9-12.

In order to satisfy the subjective prong of the test for deliberate indifference, Plaintiff must allege that each Defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health and safety." *Farmer*, 511 U.S. at 837. A defendant knows of and disregards an excessive risk to a prisoner's health or safety when he or she is both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and he or she actually draws that inference. *Id.* Importantly, "it is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Accordingly, a prisoner does not have a valid claim of deliberate indifference simply because he was denied "a particular course of treatment" that he desired. *Callahan v. Poppell*, 471 F.3d 1155, 1160 (10th Cir. 2006). "[A] prison doctor remains free to exercise his or her independent professional judgment," and "[m]edical decisions that may be characterized as 'classic examples of matters for medical judgment,' such as whether one course of treatment is preferable to another, are beyond the [Eighth] Amendment's purview." *Id.* (citing *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997) (also citing *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996)).

Here, Plaintiff makes conclusory allegations that the Medical Defendants were deliberately indifferent to his medical needs, but he fails to allege specific facts demonstrating that the Medical Defendants had a culpable state of mind. *See Hill v. Corr. Corp. of Am.*, No. CIV. 07-cv-00571-LTB-CBS, 2009 WL 2475134, at *4 (D. Colo. Aug. 11, 2009) (finding that the plaintiff's allegations that the "defendants failed to give adequate medical treatment" or that delays in medical treatment causes "severe complications and furtherance of pain and suffering" were inadequate to allege that the medical defendants

had a sufficiently culpable state of mind constituting deliberate indifference). A mere disagreement with the medical treatment received simply does not constitute a constitutional violation. *Id.*

Specifically, Plaintiff alleges that Defendant Eugene was deliberately indifferent by determining that Plaintiff had not suffered injuries serious enough to warrant additional medical care on the day of the extraction; that Defendant Rogers was deliberately indifferent because she was not qualified to read x-rays; and that Defendant Stob was deliberately indifferent by not following-up with Plaintiff until ten days after the cell extraction. *Am. Compl.* [#60] at 13. However, Plaintiff has failed to allege that any of the Medical Defendants were aware of a significant risk of serious injury to Plaintiff and deliberately disregarded that risk. *See Farmer*, 511 U.S. at 837. Furthermore, Plaintiff fails to assert that his allegations are anything more than a difference in opinion regarding appropriate medical care. *See Callahan*, 471 F.3d at 1160. Therefore, the Court finds that Plaintiff fails to allege anything more than a mere exercise of the Medical Defendants' medical judgment, which does not rise to the level of deliberate indifference in violation of the Eighth or Fourteenth Amendments. *See Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006).

Because the Court finds that Plaintiff fails to sufficiently allege that the Medical Defendants violated Plaintiff's constitutional rights, the Medical Defendants are entitled to qualified immunity, and the Court therefore **recommends** that all claims against Medical Defendants Eugene, Rogers, and Stob in their individual capacities on the basis of deliberate indifference be **dismissed with prejudice**. *See Brereton*, 434 F.3d at 1219. Because the Court finds that Plaintiff has failed to state a constitutional violation against the

Medical Defendants, the Court need not address the remaining part of the qualified immunity test. *Saucier*, 533 U.S. at 201.

**D.    Official Capacity Claims**

Plaintiff also alleges that all six Defendants in their official capacities have violated his rights under the Eighth and Fourteenth Amendments to be free from cruel and unusual punishment. *Am. Compl.* [#60] at 16. Defendants argue that Plaintiff has failed to sufficiently allege official capacity claims. *Denver Defs.' Motion* [#69] at 4-9; *Medical Defs.' Motion* [#73] at 12.

"An action against a person in his official capacity is, in reality, an action against the government entity for whom the person works." *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1009 (10th Cir. 1998); *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 698, 692 (1978). Here, Plaintiff alleges that Defendants are employees of the City and County of Denver ("Denver"). *Am. Compl.* [#60] at 16. Therefore, to assert a municipal liability claim against Denver, Plaintiff must allege that: (1) his constitutional rights were violated; and (2) a municipal policy or custom was the moving force behind the constitutional deprivation. *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).

The Court finds that Plaintiff has failed to allege a constitutional violation relating to the actions of any Defendant. Therefore, because Plaintiff fails to allege a constitutional violation by Defendants, Plaintiff fails to meet the first prong of the municipal liability test and, therefore, the Court **recommends** that Plaintiff's official capacities claims against all Defendants be **dismissed** as follows, based on the Court's earlier recommendations on these claims: (1) excessive force with respect to Defendants Steggs and Tomsick, **with**

**prejudice**; (2) excessive force with respect to Defendant Sharp, **without prejudice**; (3) failure to intervene with respect to Defendants Steggs, Tomsick, Sharp, and Eugene, **without prejudice**; and (4) deliberate indifference with respect to Defendants Eugene, Rogers, and Stob, **with prejudice**. *Hicks v. Anderson*, No. 11-cv-00422-WJM-KMT, 2012 WL 1415338, at *7 (D. Colo. Jan. 23, 2012); *see also Brown*, 520 U.S. at 404; *See Brereton*, 434 F.3d at 1219.

### III. Conclusion

For the foregoing reasons,

The Court respectfully **RECOMMENDS** that the Motions [#69, #73, #74, #75] be **GRANTED**. The Court **recommends** dismissing Plaintiff's claims of excessive force and deliberate indifference against Defendants Steggs, Tomsick, Eugene, Rogers, and Stob in their individual capacities **with prejudice**. The Court recommends dismissing Plaintiff's claim of excessive force against Defendant Sharp in his individual capacity and the claims against Defendants Tomsick, Steggs, and Eugene for failure to intervene **without prejudice**. The Court **recommends** that Plaintiff's official capacities claims against all Defendants be **dismissed** as follows: (1) excessive force with respect to Defendants Steggs and Tomsick, **with prejudice**; (2) excessive force with respect to Defendant Sharp, **without prejudice**; (3) failure to intervene with respect to Defendants Steggs, Tomsick, Sharp, and Eugene, **without prejudice**; and (4) deliberate indifference with respect to Defendants Eugene, Rogers, and Stob, **with prejudice**.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written

objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: February 21, 2018                    BY THE COURT:

Kristen L. Mix
United States Magistrate Judge