IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 16-cv-002232-RBJ-KLM

BRIAN SCHABOW,

       Plaintiff,

v.

STEGGS, individually and official as Denver Sheriff Deputy,
TOMSICK, individually and official as Denver Sheriff Deputy Sergeant,
K SHARP, individually and official as Denver Sheriff Deputy,
STOB, individually and officially as Denver Health Doctor,
CARROLL, individually and officially as Denver Health Psychiatric Nurse, and
EUGENE, individually and officially as Denver Health Practical Nurse,

       Defendants.

---

# ORDER

---

This matter is before the Court on the February 21, 2018 Recommendation of Magistrate Judge Kristen L. Mix [ECF No. 92] to grant defendants Steggs, Tomsick, and Sharp's motion to dismiss plaintiff's amended complaint [ECF No. 69]; grant defendants Stob, Carroll, and Eugene's[1] motion to dismiss plaintiff's amended complaint [ECF No. 73]; grant defendant Steggs's motion to dismiss plaintiff's amended complaint, filed in his individual capacity [ECF No. 74]; and grant defendants Tomsick and Sharp's motion to dismiss plaintiff's amended

---

[1] The Court notes that in their motion to dismiss [ECF No. 73] and reply brief [ECF No. 89], defendants "Carroll" and "Eugene" are identified as Carol Rogers, RN, and Eugene Pavlenko, LPN.  For the sake of uniformity I will refer to the defendants in this order by the names listed in the case caption.

complaint, filed in their individual capacities [ECF No. 75]. The Recommendation is incorporated herein by reference. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b).

The Recommendation advised the parties that specific written objections were due within fourteen (14) days after being served with a copy of the Recommendation. ECF No. 92 at 27–28. Mr. Schabow did not file an objection. However, the mailed copy of Magistrate Judge Mix's recommendation was returned as undeliverable. We contacted the Denver Detention Center and learned that he had been released from that facility and transported to a community corrections facility, Peer One, in January 2017. He did not notify the Court of a change of address. We then sent a copy of Judge Mix's recommendation to Mr. Schabow at Peer One. We still did not receive any objection.

Nevertheless, the Court has reviewed all of the relevant pleadings and Judge Mix's recommendation de novo. Based on that review the Court adopts and affirms the Recommendation of Judge Mix. Therefore, defendants' motions to dismiss must be GRANTED.

## I.    BACKGROUND

Magistrate Judge Mix provided a detailed summary of the procedural and factual background of this case in her recommendation. *See* ECF No. 92 at 1–6. What follows is a condensed recitation of the relevant facts. At the time the actions giving rise to this lawsuit took place, plaintiff Brian Schabow was an inmate at the Van Cise-Simonet Detention Center ("DDC") in Denver, Colorado. ECF No. 60 at 6–7. Defendants are six DDC employees. *Id.* at 2–4. Mr. Schabow, proceeding pro se, filed his complaint on March 10, 2017 asserting that each of the six defendants violated his rights under the Eighth and Fourteenth Amendments to the United States Constitution in connection with events that occurred on July 17, 2016. *Id.* at 1, 22.

On that day plaintiff was housed in a Special Management Unit ("SMU") of the DDC.
*Id.* at 7. While confined in the SMU, plaintiff received his meals through a tray slot in the door.
*Id.* According to plaintiff he received a lunch tray with a hair in it, and, frustrated by a verbal
argument with a DDC employee not named as a party in this suit, he threw a cup of juice onto
the DDC employee through the tray slot. *Id.* Plaintiff then stuck his hands out of the tray slot
and refused to move them until the DDC employee went to get a supervisor. *Id.* Within minutes
defendant Steggs appeared and told plaintiff to remove his hands from the tray slot. *Id.* Plaintiff
refused to do so. *Id.* Plaintiff alleges that defendant Steggs responded by "violently kick[ing]
the door to the tray slot . . . caus[ing] the . . . door to slam on [his] hands . . . crushing [his] hand
– causing much pain." *Id.*

Next, plaintiff proceeded to cover the windows of his SMU so that none of the DDC
deputies could see inside. *Id.* Plaintiff alleges that after a "short time passed and without any
warning or notification" defendants Tomsick, Sharp, and other deputies entered his SMU and
"violently assaulted" him by twisting his fingers and punching him in the back. *Id.* After about
15 to 20 seconds plaintiff was removed from his SMU and allegedly "slammed face down" onto
a metal table by an unidentified deputy. *Id.* at 8. Plaintiff was then "slammed to the floor" with
his legs in an "awkward" and "painful" position. *Id.* At this time, according to plaintiff,
defendant Sharp was "yelling for [plaintiff] to straighten his legs and stop resisting so . . . Sharp
could place the leg restraints on [plaintiff]." *Id.* Plaintiff claims that he tried to comply with
defendant Sharp's orders but Sharp "took out his O.P.N.'s and put them within [plaintiff's] right
ankle area and twisted (contorted) them" in an "attempt to bring more 'pain' to [plaintiff]." *Id.*
At this point it is alleged that defendant Sharp "lost his physical self control" and placed a pair of

leg restraints onto plaintiff that were "very – very – very tight" and caused plaintiff "much 'pain and suffering.'" *Id.*

After plaintiff was restrained he was examined by defendant Eugene, the DDC nurse responsible for conducting a medical examination of his condition. *Id.* Plaintiff alleges that Eugene performed a "visual look over" of his body but failed to ask him what injuries he sustained or see the "large gash" on his leg. *Id.* Plaintiff claims Eugene was "unqualified" to assess plaintiff's injuries, and that his actions amounted to "deliberate indifference" to plaintiff's medical needs. *Id.*

Plaintiff alleges that the next day, July 18, 2016, x-rays were taken of his ankle and leg. *Id.* at 8–9. Plaintiff claims that defendant Carroll examined those x-rays and determined that no bones were broken. *Id.* at 9. Plaintiff alleges that Carroll was not trained to read x-rays, and therefore she acted "within a professional scope [she] had no training in." *Id.* Plaintiff further alleges that defendant Carroll acted with a "culpable state of mind" that amounted to a "'deliberate indifference' to [plaintiff's] health and safety" and in the process "wanton[ly] inflict[ed]" pain and suffering in violation of the Eighth and Fourteenth Amendments. *Id.* at 13.

Last, plaintiff alleges that defendant Stob acted with "deliberate indifference" amounting to a violation of his Eighth and Fourteenth Amendment rights by failing to evaluate plaintiff's injuries at any point after the July 17, 2016 incident despite plaintiff's "numerous" requests. *Id.* at 9, 13. Plaintiff does allege, however, that defendant Stob visited him on July 27, 2016 and examined him "through the glass window" of his cell. *Id.* at 12. Plaintiff alleges that during the ten days between the incident and defendant Stob's visit he "endur[ed] much 'pain and suffering.'" *Id.* Further, plaintiff alleges that "all of [the] 'permanent damage' done to his

ankles could have been prevented if [Stob] would have provided [plaintiff] with 'adequate medical care.'" *Id.* Instead, plaintiff alleges that defendant Stob chose not to provide adequate medical care and did so "with a 'culpable state of mind.'" *Id.* at 9. Plaintiff claims the injuries he received were diagnosed in February of 2017. *Id.*

In sum, plaintiff claims, pursuant to 42 U.S.C. § 1983, that each of the six defendants, in their individual and official capacities, inflicted pain and suffering on plaintiff in violation of his rights under the Eighth and Fourteenth Amendments to the United States Constitution. *Id.* at 16, 20. Plaintiff seeks injunctive relief to receive "adequate medical care" and "to be free from 'excessive use of force,'" and to require defendants to follow proper cell extraction policy and procedure. *Id.* at 22. Plaintiff also seeks monetary damages totaling $500,000.00. *Id.*

## II. STANDARD OF REVIEW

### A. <u>Magistrate Judge Mix's Recommendation</u>.

When a magistrate judge makes a recommendation on a dispositive motion, the district court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). An objection is sufficiently specific if it "focus[es] the district court's attention on the factual and legal issues that are truly in dispute." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). In the absence of a timely and specific objection, "the district court may review a magistrate's report under any standard it deems appropriate." *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991). As indicated, Mr. Schabow did not file an objection, but I have reviewed the motions de novo.

**B.   Rule 12(b)(6) – Motion to Dismiss for Failure to State a Claim.**

To survive a 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  While the Court must accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002), purely conclusory allegations are not entitled to be presumed true, *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).  However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard.  *See Twombly*, 550 U.S. at 556.  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (quoting *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991)).

To plead a claim for relief under 42 U.S.C. § 1983, a plaintiff must show that the defendant, acting under color of state law, deprived him of a right secured by the United States Constitution or its laws. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999).  "A defendant may not be held liable under § 1983 unless he or she subjected a citizen to the deprivation, or caused a citizen to be subjected to the deprivation." *Lippoldt v. Cole*, 468 F.3d 1204, 1219 (10th Cir. 2006) (alterations and citation omitted).

When a case involves a pro se party, courts will "review his pleadings and other papers liberally and hold them to a less stringent standard than those drafted by attorneys." *Trackwell v.*

*U.S. Government*, 472 F.3d 1242, 1243 (10th Cir. 2007).  However, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  A broad reading of a pro se plaintiff's pleadings "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based . . . conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."  *Id.*  Pro se parties must "follow the same rules of procedure that govern other litigants."  *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

## III.    ANALYSIS

Plaintiff asserts that defendants violated his rights under the Eighth and Fourteenth Amendments to the United States Constitution.  ECF No. 60 at 16, 20.  Defendants argue that this Court should analyze plaintiff's claims under the Eighth Amendment, but I agree with Judge Mix that plaintiff's status as a pretrial detainee on July 17, 2016 makes the Fourteenth Amendment's Due Process Clause the appropriate vehicle for my analysis.  ECF No. 92 at 7. *See Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2475 (2015) (making clear that "pretrial detainees (unlike convicted prisoners) cannot be punished…").  I further agree with Judge Mix that applying the "objectively reasonable" test from *Kingsley*, plaintiff has failed to state a valid claim for relief against defendants Steggs, Tomsick, and Sharp for excessive force.  Without evidence of constitutionally-prohibited excessive force, none of the defendants can be held liable for a failure to intervene.  Next, I agree with Judge Mix that plaintiff has not sufficiently pled his claim that defendants Stob, Carroll, and Eugene violated his constitutional rights by being deliberately indifferent to his medical needs.  Last, because plaintiff has not adequately alleged

that the actions of any defendants gave rise to a constitutional injury, his claims against defendants in their official capacities must also be dismissed.

A. **Claims Against Defendants in Their Individual Capacities.**

Plaintiff alleges in his complaint that defendants Steggs, Tomsick, Sharp, Stob, Carroll, and Eugene each violated his constitutional rights and are each liable in their individual capacities. ECF No. 60 at 10. Defendants assert plaintiff's complaint must be dismissed because they are entitled to qualified immunity from liability. ECF No. 73 at 4–6; ECF No. 74 at 4–5; ECF No. 75 at 13–15. Under 42 U.S.C. § 1983, government officials are entitled to qualified immunity from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person in their position would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In part, qualified immunity works to alleviate government defendants from the burdens of litigation so that they may focus on their official duties. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

My analysis of qualified immunity in the context of a 12(b)(6) motion to dismiss involves two inquiries. I must determine whether the alleged facts, taken in the light most favorable to the plaintiff, sufficiently allege a constitutional violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). I must also determine whether the plaintiff has shown that the constitutional right was "clearly established" at the time of the government officials' conduct. *Id.* I may engage these two inquiries in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The question of whether a constitutional right was "clearly established" must be asked in "the context of the particular case before the court, not as a general, abstract matter." *Simkins v. Bruce*, 406 F.3d 1239, 1241 (10th Cir. 2005). That is, "[t]he relevant, dispositive inquiry in

determining whether a right is clearly established is whether it would be clear to a reasonable officer [in the defendant's position] that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202; *see also Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). In order for a constitutional right to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clear weight of authority from other circuits must establish the constitutional right. *Cox v. Glanz*, 800 F.3d 1231, 1247 (10th Cir. 2015). "The precedent is considered on point if it involves materially similar conduct or applies with obvious clarity to the conduct at issue." *Lowe v. Raemisch*, 864 F.3d 1205, 1208 (10th Cir. 2017) (internal quotations omitted). "Because the prior case must involve materially similar conduct or apply with obvious clarity, qualified immunity generally protects all public officials except those who are plainly incompetent or those who knowingly violate the law." *Id.* (internal quotations omitted).

1. Excessive Force Claims Against Defendants Steggs, Tomsick, and Sharp.

Plaintiff first claims that defendants Steggs, Tomsick, and Sharp violated his constitutional rights by subjecting him to the excessive use of force. ECF No. 60 at 12. Defendants argue for dismissal because plaintiff has failed to allege both the objective and subjective prongs of the excessive force test under the Eighth Amendment. ECF No. 74 at 5–6; ECF No. 75 at 5. As stated above, defendants apply an incorrect Eighth Amendment rubric to what is properly categorized as a Fourteenth Amendment claim. According to the Supreme Court in *Kingsley*, the relevant standard for an excessive use of force claim is objective, not subjective and plaintiff is not required to prove a defendant's state of mind. *Kingsley*, 135 S. Ct. 2472. To successfully allege a 42 U.S.C. § 1983 claim of excessive force under the Fourteenth

Amendment, a pretrial detainee must allege "that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 2473.

I cannot apply this standard mechanically. Rather, "objective reasonableness turns on the 'facts and circumstances of each particular case.'" *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989). To determine objective unreasonableness, I consider the following, non-exclusive list of factors: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.* I must also account for the "'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 540 (1979). The relevant factors will be applied to the actions of each of defendants Steggs, Tomsick, and Sharp in turn.

a. Defendant Steggs.

Plaintiff alleges that after he "declined" a command to remove his hands from the tray slot and requested to speak with a supervisor, defendant Steggs "violently kicked the door to the tray slot" while plaintiff had his hands in the tray slot which resulted in his hand becoming "crush[ed]" causing "much pain." ECF No. 60 at 11. Plaintiff asserts that defendant Steggs's actions were done with a "deliberate indifference" to his health and safety, and with an intent that was both "evil" and "malicious." *Id.* Further, plaintiff alleges that defendant Steggs's actions resulted in his hand becoming bruised. *Id.* at 8. To determine whether plaintiff has

sufficiently alleged that defendant Steggs's actions amounted to a constitutional violation, I apply the *Kingsley* factors. I agree with Judge Mix that the following factors are relevant to the tray slot incident: the need for force and the amount of force; the threat perceived by defendant Steggs; whether plaintiff was resisting; the legitimate interests in the need to maintain internal order; and the extent of plaintiff's injuries.

Here, plaintiff admits in his complaint that prior to defendant Steggs's arrival he had already thrown juice at another deputy through the tray slot. *Id.* at 7. He further admits that he was refusing to obey defendant Steggs's orders to remove his hands from the tray slot. *Id.* Plaintiff fails to allege that by keeping the tray slot open and disobeying defendant Steggs he was not posing a continued threat to DDC employees. Arguably throwing juice alone is a relatively insubstantial "threat," but a reasonable person in defendant Steggs's position, without access to 20/20 hindsight, could have perceived a significant threat in the moment. It is also possible that, on different facts, kicking the tray slot shut could have risen to the level of excessive force. Had plaintiff suffered broken bones in his hands, for example, it would be easier to find that plaintiff's complaint sufficiently pled a constitutional harm. But mere bruising, when considered in light of the totality of the circumstances, is not enough injury to show that defendant Steggs's decision to kick the tray slot closed was "objectively reasonable."

Finding that plaintiff's excessive force claim against defendant Steggs fails to show a constitutional violation, I need not determine whether the "clearly established right" prong of the qualified immunity test is met. *Saucier*, 533 U.S. at 201. Accordingly, with respect to plaintiff's excessive force claim against defendant Steggs in his individual capacity, defendant's motion to dismiss is GRANTED and plaintiff's claim is dismissed with prejudice.

b. <u>Defendant Tomsick</u>.

Plaintiff pled few facts about defendant Tomsick's alleged constitutional violation. The extent of his allegations is that after plaintiff covered the windows of his cell, defendant Tomsick was the first of a handful of DDC officers to "rush[] into [his] cell" wherein plaintiff alleges he was "violently assaulted." ECF No. 60 at 7. Plaintiff claims that defendant Tomsick grabbed him by his body and then grabbed his hands before using "the law enforcement wrist and hand-twist/with finger twisting to take control of [him]." *Id.* Plaintiff alleges no more facts specific to defendant Tomsick and never claims that defendant Tomsick caused him any pain or injury. Again, I elect to apply the *Kingsley* factors that Judge Mix applied in her Recommendation: whether there was a legitimate reason for defendant Tomsick to twist plaintiff's fingers; whether plaintiff was resisting; and the extent of plaintiff's alleged injuries.

Taking the allegations in the light most favorable to plaintiff, I do not find a constitutional violation. Plaintiff admits that defendant Tomsick was attempting to take control of him when he employed the arm-twisting maneuver. *Id.* Given that defendant Tomsick had a legitimate interest in maintaining order when he took control of plaintiff and given that plaintiff fails to allege any injury as a result of this interaction, he fails to adequately allege that defendant Tomsick's actions were "objectively unreasonable."

As above, without an objectively unreasonable act there can be no excessive force and no constitutional violation. Again, I need not consider the "clearly established right" prong of the qualified immunity test under *Saucier*. Accordingly, with respect to plaintiff's excessive force claim against defendant Tomsick in his individual capacity, defendant's motion to dismiss is GRANTED and plaintiff's claim is dismissed with prejudice.

c.   <u>Defendant Sharp</u>.

Plaintiff's excessive force claim against defendant Sharp invites closer scrutiny.  Plaintiff alleges that after he was removed from his cell he was "slammed to the floor," and his legs became positioned awkwardly and painfully.  *Id.* at 8.  Plaintiff alleges that at this point defendant Sharp was yelling at him "to straighten his legs and stop resisting" so leg restraints could be applied.  *Id.* at 8, 11.  Plaintiff alleges that he tried to comply but defendant Sharp took out his Orcutt Police Nunchaku ("OPN") and twisted them "within [his] right ankle area" in order to effect "more pain" onto plaintiff and to force him to comply.  *Id.*  Plaintiff claims that defendant Sharp failed to evaluate the position of plaintiff's body, and that if he had he would have seen that plaintiff could not have complied with directives to straighten his legs.  *Id.*  Next, plaintiff alleges that defendant Sharp placed "leg restraints" on plaintiff that were so tight ("very – very –very tight") that the restraints cut into his legs and caused an open wound and "much pain and suffering."  *Id.*

Plaintiff further alleges that defendant Sharp's application of the leg restraints and his use of an OPN resulted in "permanent damage" as determined by an orthopedist.  *Id.* at 12.  Plaintiff does not elaborate on any diagnosis, but alleges in his complaint that he "is waiting to receive an ankle brace . . . has been prescribed ice rub downs for his tendons in his ankles . . . will now have to be on [anti-inflammation medication]," and that his ankle condition amounts to "a permanent disability that will now affect him for the rest of his life."  *Id.*

Once more, I will apply the *Kingsley* factors identified by Judge Mix to the actions of defendant Sharp: whether the allegations demonstrate that plaintiff was actively resisting; whether defendant Sharp used a reasonable amount of force; if defendant Sharp made any effort

13

to limit the amount of force used; the extent of plaintiff's injuries; the threat reasonably perceived; and the need to maintain order at DDC.

Plaintiff fails to allege in his complaint that he was not actively resisting at the time defendant Sharp allegedly applied excessive force.  In fact, plaintiff states that defendant Sharp was "yelling" at him to "stop resisting" and admits that some of defendant Sharp's actions were done to force plaintiff to comply with directions.  *Id.* at 8.  Plaintiff alleges that if defendant Sharp had  evaluated plaintiff's body positioning he would have seen that plaintiff could not have complied, but plaintiff never pleads that he expressed to defendant Sharp his inability to comply with a command to straighten his legs.

With respect to the use of force, plaintiff alleges that defendant Sharp, rather than applying appropriate force or limiting the amount of force used, "actually lost his physical self control" while attempting to restrain plaintiff.  *Id.*  This loss of control, according to plaintiff, is what led to the painful application of leg restraints.  *Id.*   However, plaintiff fails to allege that defendant Sharp's use and amount of force was unnecessary given the circumstances of the cell extraction.  He does not allege that he would have complied had a lesser, more appropriate, amount of force been used.

Plaintiff alleges that his interaction with defendant Sharp caused bruising, a cut, and permanent physical damage to his ankles.  However, plaintiff fails to allege with sufficient specificity the severity of those injuries.  Plaintiff further fails to plead any facts about his condition between his visit from defendant Stob 10 days after the cell extraction and his alleged diagnosis in February 2017. The Tenth Circuit, for example, determined that "minor abrasions and skin breaks as a result of [] dragging" did not rise to the level of a constitutional violation

when the force was applied to restrain a resisting prisoner. *Richardson v. Daniels*, 557 F. App'x 725, 727–28 (10th Cir. 2014). Without more facts I am unable to find that the injuries plaintiff allegedly received as a result of his interaction with defendant Sharp rise to the level of a constitutional violation.

Finally, plaintiff does not sufficiently plead that it was objectively unreasonable for defendant Sharp to use the force he did to maintain order at DDC. Instead, plaintiff admits that in the time preceding the cell extraction he had thrown juice at one officer and violated DDC policy by covering the windows to his cell. *Id.* at 7. Further, in light of plaintiff's admission that defendant Sharp's actions were to force his compliance it is reasonable that officer Sharp reasonably perceived a threat.

Considering these factors, the Court finds that plaintiff has not sufficiently pled that defendant Sharp's actions amounted to a constitutional violation. Without evidence of a constitutional violation present I need not continue my analysis under *Saucier* and consider whether the right allegedly violated was "clearly established." Accordingly, with respect to plaintiff's excessive force claim against defendant Sharp in his individual capacity, defendant's motion to dismiss is GRANTED and plaintiff's claim is dismissed without prejudice.

2. Failure to Intervene Claims Against Defendants Steggs, Tomsick, Sharp, and Eugene.

Next, plaintiff asserts in his complaint that defendants Steggs, Tomsick, Sharp, and Eugene each failed to intervene—the first three during the cell extraction and defendant Eugene at an unspecified time. *Id.* at 15. In order to be liable under 42 U.S.C. § 1983 for a failure to intervene, the Tenth Circuit has recognized that "the officers must have observed or had reason

to know of a constitutional violation and have had a realistic opportunity to intervene." *Jones v. Norton*, 809 F.3d 564, 576 (10th Cir. 2015) (alterations and citations omitted). Here, as plaintiff has unsuccessfully pled constitutionally-prohibited excessive force, none of the defendants can be held liable under a failure to intervene theory. However, as plaintiff might be able to allege facts sufficient to show that defendant Sharp engaged in unconstitutional behavior in some future complaint, plaintiff's claims of failure to intervene against defendants Steggs, Tomsick, Sharp, and Eugene are dismissed without prejudice.

### 3. Deliberate Indifference Claims Against Defendants Stob, Carroll, and Eugene.

Plaintiff further alleges that defendants Stob, Carroll, and Eugene violated his constitutional rights through their deliberate indifference to his medical needs. ECF No. 60 at 12–13. These defendants argue that they are entitled to qualified immunity. ECF No. 73 at 4. I will analyze plaintiff's claim according to the same two-prong qualified immunity doctrine as above: (1) whether plaintiff has sufficiently alleged a constitutional violation; and (2) whether that constitutional right was clearly established. *Saucier*, 533 U.S. at 201.

The Supreme Court holds that because prisoners "must rely on prison authorities to treat [their] medical needs . . . deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). The test for deliberate indifference contains both objective and subjective elements: a prisoner must establish that he was deprived of a medical need that is, objectively, "sufficiently serious," and he must establish that the defendant subjectively knew of and disregarded "an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825 834, 837 (1994). As the same

legal rules apply cleanly to each, claims against defendants Stob, Carroll, and Eugene will be addressed collectively.

Plaintiff alleges that defendant Eugene was the first medical provider to see him after the cell extraction. ECF No. 60 at 8. Plaintiff claims that the medical evaluation defendant Eugene performed amounted to no more than a "visual look over." *Id.* Plaintiff claims that defendant Eugene failed to ask if he had sustained any injuries and also failed to see the "large gash" on plaintiff's leg, "let alone clean and cover that wound." *Id.* at 8, 13. Plaintiff further asserts— without factual support—that defendant Eugene was "unqualified" to assess his injuries, and that defendant Eugene's mental state was that of "deliberate indifference" which caused plaintiff to endure a "wanton infliction of pain and suffering." *Id.* Plaintiff claims that defendant Eugene's medical care was not "adequate." *Id.* at 13. Significantly, however, plaintiff never alleges in his complaint that he told, or was prevented from telling, defendant Eugene about the gash on his leg or requested that it be treated.

Plaintiff next claims that the day after the cell extraction incident x-rays were taken of his ankle and leg. ECF No. 60 at 9. He claims that defendant Carroll examined those x-rays and found that no bones were broken in plaintiff's ankle or leg. *Id.* As with defendant Eugene, plaintiff conclusorily asserts that defendant Carroll was not qualified to perform the medical tasks that she performed for plaintiff. *Id.* In particular, plaintiff claims that defendant Carroll was "not trained to read x-rays so Defendant Carroll acted within a professional scope that [she] had no training in." *Id.* Plaintiff claims without factual support that defendant Carroll's actions were done with a "culpable state of mind" and amounted to "deliberate indifference" to his

health and safety. *Id.* at 13. He last asserts that defendant Carroll failed to provide him with adequate medical care. *Id.*

Plaintiff then asserts that defendant Stob saw him on July 27, 2016, 10 days after the cell extraction incident. ECF No. 60 at 9, 12. Plaintiff claims that despite being seen by defendant Stob, defendant Stob did not evaluate him at any time after the incident, and that this lack of evaluation amounted to "deliberate indifference." *Id.* at 9. Specifically, plaintiff alleges that when defendant Stob visited his cell on July 27 he "did not even enter the Plaintiff's cell and give him a physical exam – one that was hands on in nature but yet stood cell side and looked at the Plaintiff through the glass window." *Id.* at 12. Plaintiff conclusorily asserts that the exam (or lack thereof) was done with a "culpable state of mind." *Id.* In particular, plaintiff alleges that defendant Stob knew of his injuries "yet permitted [him] to suffer." *Id.* at 9. Plaintiff further claims that all of the "permanent damage" done to his ankles could have been prevented if defendant Stob would have provided him with "adequate medical care" instead of acting with "deliberate indifference to the Plaintiff's medical needs." *Id.* at 12–13. Plaintiff alleges that his injuries prevent him from doing "any serious amount of walking or running laps" because doing so causes him "much pain and suffering." *Id.* at 9, 12.

### a. Objective Component.

Defendants Stob, Carroll, and Eugene argue in their motion to dismiss that plaintiff fails to meet the objective component of a deliberate indifference claim because he fails to allege an objectively serious medical need. ECF No. 73 at 7. A medical need is sufficiently serious under the test for deliberate indifference "'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the

necessity for a doctor's attention.'" *Hunt v. Uphoff*, 199 F. 3d 1220, 1224 (10th Cir. 1999)

(quoting *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980) (internal quotations omitted)).

"Where the necessity for treatment would not be obvious to a lay person, the medical judgment

of the physician, even if grossly negligent, is not subject to second-guessing in the guise of an

Eighth Amendment claim. *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005). Further, a delay in

medical care can constitute a violation of the Eighth Amendment, but only if the delay resulted

in "substantial harm." *Id.* (citing *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001)).

Substantial harm may be demonstrated "'by lifelong handicap, permanent loss, or considerable

pain.'" *Id.* (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

Plaintiff alleges neither that the injuries he complains of had been previously diagnosed

by a physician as mandating treatment nor that the injuries to his leg and ankle were so obvious

at the time defendants Stob, Carroll, and Eugene treated him that even a lay person would have

recognized the need for medical attention. All plaintiff alleges with respect to the objective

condition of his injuries is that he had a "large gash" on his ankle and was bleeding on the day of

the cell extraction. ECF No. 60 at 13. Plaintiff alleges that in February of 2017—more than six

months after the cell extraction incident—he received a diagnosis of "permanent damage" to his

ankle. ECF No. 60 at 12.

I find that plaintiff's description of his injuries, without further explanation as to their

severity, does not make clear that (1) they were diagnosed at the time he received care from

defendants Stob, Carroll, and Eugene or (2) a lay person would have found his injuries

sufficiently serious. However, plaintiff's allegations of "permanent damage" resulting from

delay in care might rise to the level of "substantial harm" in violation of the Eighth Amendment.

Therefore, I will assume that plaintiff has sufficiently alleged the objective component of the test for deliberate indifference before considering the subjective component.

b. <u>Subjective Component</u>.

Plaintiff's claims fail under the more challenging subjective component of the deliberate indifference test. As stated above, in order to satisfy the subjective component of the test, plaintiff must allege that each defendant "kn[ew] of and disregard[ed] an excessive risk to [his] health or safety." *Farmer*, 511 U.S. at 837. A defendant knows of and disregards an excessive risk to a prisoner's health or safety when he is both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and he actually draws that inference. *Id.* Further, a prisoner does not have a valid claim of deliberate indifference simply because he would have preferred "a particular course of treatment" to the one he received, e.g., a "hands on" evaluation as opposed to a visual evaluation. *Callahan v. Poppell*, 471 F.3d 1155, 1160 (10th Cir. 2006). Instead, "[A] prison doctor remains free to exercise his or her independent professional judgment" and "[m]edical decisions that may be characterized as 'classic examples of matters for medical judgment,' such as whether one course of treatment is preferable to another, are beyond the [Eighth] Amendment's purview." *Id.* (citing *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997) and *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996)).

Here plaintiff makes conclusory allegations but fails to plead specific facts demonstrating that any of defendants Stob, Carroll, and Eugene possessed a culpable state of mind when they provided him treatment. In particular, plaintiff alleges that defendant Eugene was deliberately indifferent when he did not offer plaintiff additional medical care the day of the cell extraction

incident; that defendant Carroll was deliberately indifferent when she read his x-rays; and that defendant Stob was deliberately indifferent when he failed to follow-up with plaintiff until 10 days after the incident. ECF No. 60 at 13. Nowhere, however, does plaintiff allege that any of the defendants were aware of and disregarded an excessive risk to his health or safety. Further, plaintiff has not alleged that his contention with defendants Stob, Carroll, and Eugene amounts to anything more than a difference of opinion as to appropriate medical care. This does not rise to the level of deliberate indifference under the Eighth Amendment.

As plaintiff has not sufficiently pled that defendants Stob, Carroll, and Eugene violated his constitutional rights, these defendants are entitled to qualified immunity and claims made against them in their individual capacities on the basis of deliberate indifference are dismissed. Their corresponding motion is GRANTED.

### B. Claims Against Defendants in Their Official Capacities.

In addition to the claims plaintiff makes against defendants in their individual capacities, plaintiff alleges that all six defendants violated his rights under the Eighth and Fourteenth Amendments in their *official* capacities. ECF No. 60 at 16. Defendants argue in their motions to dismiss that plaintiff has failed to sufficiently allege official capacity claims. ECF No. 69 at 4–9; ECF No. 73 at 12. I agree with defendants.

Official capacity suits, "in all respects other than name, [are] to be treated as [suits] against the entity [for whom the defendant works]." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *see also Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1009 (10th Cir. 1998) ("An action against a person in his official capacity is, in reality, an action against the government entity for whom the person works."). Here, plaintiff alleges that defendants are employees of the City and

County of Denver ("Denver"). ECF No. 2–4. Therefore, to assert a plausible municipal liability claim against Denver, plaintiff must allege facts showing that (1) his constitutional rights were violated; and (2) a municipal policy or custom was the moving force behind the constitutional deprivation. *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). As described in detail above, the Court finds that plaintiff has insufficiently alleged a constitutional violation relating to the actions of any named defendants. Consequently, plaintiff fails to meet the first prong of the test for municipal liability and defendants' related motions to dismiss are GRANTED and plaintiff's claims against defendants in their official capacities are dismissed.

## ORDER

For the foregoing reasons, it is ORDERED that the Recommendation of United States Magistrate Judge Mix [ECF No. 92] is ACCEPTED and ADOPTED and defendants' motions to dismiss [ECF Nos. 69, 73, 74, 75] are GRANTED. Plaintiff's claims of excessive force and deliberate indifference against defendants Steggs, Tomsick, Eugene, Carroll, and Stob in their individual capacities are DISMISSED with prejudice. Plaintiff's claim of excessive force against defendant Sharp in his individual capacity is DISMISSED without prejudice. Plaintiff's claim of failure to intervene against defendants Steggs, Tomsick, Sharp, and Eugene in their individual capacities is DISMISSED without prejudice. Further, plaintiff's official capacity claims against all defendants will be DISMISSED as follows: (1) excessive force with respect to defendants Steggs and Tomsick, with prejudice; (2) excessive force with respect to defendant Sharp, without prejudice; (3) failure to intervene with respect to defendants Steggs, Tomsick, Sharp, and Eugene, without prejudice; and (4) deliberate indifference with respect to defendants Eugene, Carroll, and Stob, with prejudice.

DATED this 30th day of  March, 2018.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge